NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MASIMO CORPORATION,**
*Appellant*

**v.**

**APPLE INC.,**
*Appellee*

---

2022-1894

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2020-01526.

---

Decided: January 10, 2024

---

JEREMIAH HELM, Knobbe, Martens, Olson & Bear, LLP, Irvine, CA, argued for appellant. Also represented by JOHN M. GROVER, STEPHEN C. JENSEN, SHANNON LAM, JOSEPH R. RE.

LAUREN ANN DEGNAN, Fish & Richardson P.C., Washington, DC, argued for appellee. Also represented by MICHAEL JOHN BALLANCO, WALTER KARL RENNER; ROBERT COURTNEY, Minneapolis, MN.

---

Before LOURIE, PROST, and REYNA, *Circuit Judges*.

PROST, *Circuit Judge*.

Masimo Corporation ("Masimo") appeals from a final written decision of the Patent Trial and Appeal Board ("Board") in an inter partes review ("IPR") determining claim 15 of U.S. Patent No. 6,771,994 ("the '994 patent") unpatentable for obviousness. We affirm.

## BACKGROUND

Apple Inc. ("Apple") petitioned for IPR of claim 15 of the '994 patent, which recites:

> 15. A sensor which generates at least first and second intensity signals from a light-sensitive detector which detects light of at least first and second wavelengths transmitted through body tissue carrying pulsing blood; the sensor comprising:
>
> > at least one light emission device;
> >
> > a light sensitive detector; and
> >
> > *a plurality of louvers positioned over the light sensitive detector to accept light from the at least one light emission device originating from a general direction of the at least one light emission device and then transmitting through body tissue carrying pulsing blood, wherein the louvers accept the light when the sensor is properly applied to tissue of a patient.*

'994 patent claim 15 (emphasis added). We refer to the language emphasized above as the "louver element."

Apple argued in its IPR petition that claim 15 was unpatentable because, among other things, it would have been obvious over a combination of Webster[1] and Melby.[2]

Webster undisputedly disclosed everything in claim 15 except for the louver element. *See Apple Inc. v. Masimo Corp.*, No. IPR2020-01526, 2022 WL 1153450, at *7–8 (P.T.A.B. Apr. 12, 2022) ("*Final Written Decision*"); *see also* J.A. 333–37; Oral Arg. at 6:15–40.[3] Webster described, however, the "importan[ce] [of] minimiz[ing] the effects from light other than the optical signals of interest," and stated that "[o]ne way to minimize unwanted light incident upon the detector is to place *some type of light filter* over the detector." J.A. 950 (emphasis added). According to Webster, doing so "allows light of wavelengths of interest to pass through the filter but does not allow light of other wavelengths to pass through the filter." J.A. 950.

Melby, titled "Light Control Film with Reduced Ghost Images," disclosed a "louvered plastic film." Melby at [54], [57]. Melby contemplates using its louvered film as a "privacy filter" on computer displays, *see id.* at col. 6 ll. 7–10, or as a "sunscreen in the rear window of an automobile," *id.* at col. 4 ll. 66–68, but it observes that such film can be "useful in a wide variety of applications," *see id.* at col. 5 ll. 9–10.

In its final written decision, the Board determined that Apple had "persuasively shown that the combination of Webster and Melby teach[es] [the louver element] and that the combination would have been both predictable and

---

[1]   *Design of Pulse Oximeters* (J.G. Webster ed., 1997) ("Webster"); J.A. 855–968.

[2]   U.S. Patent No. 5,254,388 ("Melby"); J.A. 814–21.

[3]   No. 22-1894, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1894_12062023.mp3.

supported by the references." *Final Written Decision*, 2022 WL 1153450, at \*12.

Specifically, the Board found that Webster taught "the importance of minimizing the effects of light other than the optical signals of interest, including unwanted light incident upon the detector, by placing some type of light filter over the detector." *Id.* Although Masimo had suggested that Webster's "some type of light filter" meant only *wavelength* filters, the Board found "no indication" to that effect; instead, wavelength filters were just "one example mechanism for limiting unwanted light." *Id.* at \*13. Relying on Apple's expert testimony, the Board found that a person of ordinary skill in the art would have understood that Melby's light control film, when placed over a detector, would "accept[] light from the light emission device from a particular direction based on the angle of the louvers," *id.* at \*12 (citing J.A. 658–60 ¶¶ 102–04), and would "restrict the amount of light that reaches the detector from a particular direction," *id.* (quoting J.A. 660 ¶ 104)—thus "help[ing] minimize light that has not otherwise travelled through" body tissue, *see id.* The Board ultimately determined that claim 15 was unpatentable for obviousness. *Id.* at \*14.

Masimo timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

"We review the Board's ultimate determination of obviousness de novo and its underlying factual determinations for substantial evidence." *PersonalWeb Techs., LLC v. Apple, Inc.*, 917 F.3d 1376, 1381 (Fed. Cir. 2019) (cleaned up). What the prior art disclosed and whether a person of ordinary skill in the art would have been motivated to combine prior-art references are both fact questions that we review for substantial evidence. *E.g.*, *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373, 1378 (Fed. Cir. 2023). "Substantial evidence is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1324 (Fed. Cir. 2017) (cleaned up).

Masimo first argues that the Board should have read Webster's "some type of light filter" as limited to *wavelength* filters. Appellant's Br. 23 (arguing that the Board "erred by picking out an isolated sentence" from Webster "while ignoring the context provided by Webster as a whole"). This argument, though styled as a legal error, really challenges a factfinding as to what the prior art disclosed. We conclude that a reasonable fact finder could have found, as the Board did, that when Webster said "some type of light filter," it did not mean exclusively *wavelength* filters—which were instead just "one example mechanism for limiting unwanted light." *See Final Written Decision*, 2022 WL 1153450, at \*13. Masimo's disagreement on this factual matter does not establish that the Board failed to consider Webster as a whole or that it otherwise made or relied on a factfinding lacking substantial evidence.

Masimo next says that the Board's use of the words "could" and "reasonable" show that it applied an incorrect legal standard for obviousness. *See* Appellant's Br. 19, 24–25. As an example of the former, the Board stated: "We determine that Webster teaches that in one embodiment light filters, such as those found in Melby, could be used above the detectors." *Final Written Decision*, 2022 WL 1153450, at \*13. As an example of the latter, the Board stated that "it would have been reasonable for a person of ordinary skill in the art to look to Melby to provide a light control film to help control ambient light and further to place that film over the photodiode detectors of Webster." *Id.* at \*12.

Masimo's argument is unpersuasive. Throughout the Board's decision, it made findings about what a person of ordinary skill in the art *would* have been motivated to do,

not simply what the person *could* have done. *E.g.*, *id.* ("[Apple] has persuasively shown . . . that a person of ordinary skill in the art *would have been motivated* to create its proposed combination . . . ." (emphasis added)); *id.* at *13 ("[Apple's expert] persuasively testifies that one of ordinary skill *would have been motivated* to combine Webster and Melby . . . ." (emphasis added)). And, as to the Board's use of the word "reasonable" in certain places, we see no indication—particularly given the entirety of the Board's decision—that the Board meant anything other than that a person of ordinary skill in the art would have had a reason (based on the evidence) to do whatever was being discussed.

Masimo also stresses that no reference teaches or suggests placing louvers over a detector. *E.g.*, Appellant's Br. 28 (heading VI.B.1). Essentially, its argument is: because Webster disclosed light-sensitive detectors and light filters (but not louvers specifically), and because Melby disclosed louvers (but not in the context of light-sensitive detectors), the prior art is missing a claim element—and therefore, the claimed invention was not shown to be unpatentable for obviousness. *See id.* at 22, 28–30. Masimo misunderstands the obviousness inquiry. The question is not whether the prior art disclosed the very thing claimed; it is whether, in light of the prior art, the claimed invention would have nonetheless been *obvious* to a person of ordinary skill in the art as of the relevant date. *See, e.g.*, 35 U.S.C. § 103; *Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1222 (Fed. Cir. 2022) ("That the proposed *combination* of James and POH—rather than one of the individual references—discloses the disputed claim limitations does not defeat the Board's conclusion of obviousness." (emphasis in original)). Contrary to Masimo's argument, it suffices—as the Board found—"that a person of ordinary skill in the art would have been motivated to combine the prior art in a way such that the combination discloses the claim limitation[]." *See Fleming*, 28 F.4th at 1222.

Masimo finally argues that substantial evidence does not support the Board's finding that "ambient light" "is the type of light the light control film of Melby is designed to minimize." Appellant's Br. 31 (quoting *Final Written Decision*, 2022 WL 1153450, at *12). According to Masimo, Melby is not concerned with minimizing "ambient" light; it is concerned instead with reducing ghost images, which are "from the emitted light from the screen." *See id.* at 31–32.

Our review of the Board's decision, however, leads us to conclude that, when the Board made its relevant findings, it conceived of "ambient light" more generally as including a broader subset of light unwanted for the given application. For example, over the next two paragraphs of its decision, the Board credited Apple's expert testimony concerning Melby's use of louvers to accept or restrict light based on its direction and on what should reach the target of interest. *See, e.g., Final Written Decision*, 2022 WL 1153450, at *12 ("Melby's film could be used in the Webster device as the 'light filter' to control light such that only light originating from the direction of the light emitters reaches the detector." (quoting J.A. 657 ¶ 100)); *id.* ("[Apple's expert] persuasively testifies that Melby's light control film placed above Webster's photodiode would reduce noise by accepting light from the light emission device from a particular direction based on the angle of the louvers within the light control film." (citing J.A. 658–60 ¶¶ 102–04)). Thus, regardless of whether the Board was perfectly precise when describing the light minimized by Melby's film as "ambient," we do not think its use of that term undermines its overall reasoning (or the substantial evidence supporting it) regarding what the prior art disclosed and whether a person of ordinary skill in the art would have been motivated to combine Melby with Webster to achieve the claimed invention.

CONCLUSION

We have considered Masimo's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**